UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                              )
ELAINE L. CHAO, Secretary of Labor,           )
United States Department of Labor,            )
                                              )
             Plaintiff,                        )
                                              )
v.                                             )                CIVIL ACTION
                                              )                NO.03-11480-NG
NATIONAL ASSOCIATION OF                        )
GOVERNMENT EMPLOYEES,                          )
SERVICE EMPLOYEES                              )
INTERNATIONAL UNION,                               )
AFL-CIO, CLC,                                  )
                                              )
             Defendant.                        )
_____)


**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the authority set forth in

the Labor-Management Reporting and Disclosure Act ("LMRDA" or the "Act"), 29 U.S.C.

§§ 481-483 ("LMRDA" or the "Act"), the Secretary is entitled to summary judgment because, as

a matter of law, in the absence of disputed material facts, Defendant, in violation of 29 U.S.C.

§ 481(c), failed to provide adequate safeguards to ensure a fair election of officers when it failed

to provide adequate notice of the election of 30 new union officer positions and failed to provide

a reasonable opportunity to campaign for these positions.  At the 2002 national convention of the

National Association of Government Employees (hereafter, NAGE), the convention delegates

voted to add a new Executive Board of 30 officers to the thirteen union officers whose election

had been previously announced.  Nominations for the 30 additional officer positions were

1

required to be made on the same day, and election of these officers was held on the following day.  NAGE failed to allow sufficient time for nomination and for campaigning with respect to these 30 new positions.  Accordingly, the Secretary requests that this Court declare the election null and void and order a new election, to be held under the supervision of the Secretary.

## I.  FACTS OF THE CASE

The Secretary received a written complaint, January 17, 2003, from several members of NAGE[1] challenging the election of officers at the NAGE 2002 national convention, held September 17-19, 2002.  *Exhibit 1, at 1, 4 (Formal Complaint to Department of Labor from Stern, Shapiro, Weissberg & Garin, representing individual NAGE members).*  The complainants alleged that the election conducted at the NAGE 2002 convention did not provide union members with "sufficient time or opportunity for candidates to be nominated or to campaign for the new offices" created at the convention.  *Id. at 2.*  The Secretary determined that the allegations were true with respect to 30 new Executive Board officer positions; *Exhibit 1 at 3*; and filed this action on August 8, 2003.

On August 1, 2001, NAGE had been placed into a trusteeship by the SEIU.  *Exhibit 3*, *at 6 (Findings of Fact and Conclusions of Law issued in* <u>Lyons v. SEIU</u>, *Civil Action No. 01-CV-11947-MEL (D. Mass.).*  Pursuant to the trusteeship, NAGE was managed by an appointed Trustee Joseph Buckley.  *Id. at 4, 6-7.*  On May 24, 2002, the Trustee informed NAGE local union leaders that NAGE would be released from trusteeship concurrent with the upcoming NAGE 2002 Convention at which NAGE was to elect national officers.  *Exhibit 5, at 1 (May 24,*

---

[1]NAGE is a national affiliate of the Service Employees' International Union ("SEIU").  *Exhibit 3 at 1, 3.*

*2002 Notice to NAGE Local Union Leaders).*  Also on May 24, 2002, the Trustee sent NAGE local union leaders a Convention Call for the 2002 NAGE Convention (the "Convention"), to be held September 17-20, 2002.  *Exhibit 4 at 1 (Convention Call); Exhibit 6 at 1 (SEIU-NAGE Local 5000 Election Officer Report for Protest No. 2002-12); Exhibit 9 at 3 (Appeal of Election Protest).*  The Convention Call was also made available to rank and file members of NAGE via the NAGE website. *Exhibit 7 at 2 (Nomination and Election Rules for the 2002 NAGE Convention).*  The purpose of the Convention Call was to inform union members of the business to be conducted at the Convention.  *Exhibit 6, at 1-12.*  The Convention Call notified the members that the SEIU President had appointed an Election Officer for the Convention, who was responsible for conducting the election, providing adequate safeguards to ensure a safe and fair election, and ruling on various matters related to the election.  *Exhibit 4 at 2.*

The Convention Call announced that the two principal items of business at the Convention were to be the nomination and election of NAGE national officers and consideration of amendments to the NAGE Constitution.  *Exhibit 4 at 1, 5; Exhibit 6 at 1-2.*  The Convention Call specified that the officers to be elected at the Convention were: "the National President, six National Vice Presidents, National Treasurer, National Executive Secretary and four [A]lternate Vice Presidents." *Exhibit 4 at 5.*   The Convention Call required that convention delegates from the local unions be selected by the locals before July 31, 2002.  *Id. at 4.*  Proposed amendments to the NAGE Constitution were to be submitted by August 11, 2002.  *Exhibit 4 at 5.*

On August 15, 2002, the Election Officer issued nomination and election rules for the Convention, which were posted on the NAGE website.  *Declaration of Joseph DeLorey ¶ 9; Declaration of John M. Foley ¶ 9; Declaration of Richard Gallo ¶ 9; Declaration of Paul*

*Jennings ¶ 9; all in Exhibit 16.* Like the Convention Call, the Election Rules specified that nominations would be taken for the union officer positions of President, Executive Secretary, Treasurer, Vice Presidents and Alternate Vice-Presidents. *Exhibit 7 at 7.* The Election Rules listed no other officers. *Id. at 7.* The rules required that candidates for officer positions must have declared themselves in writing to the Election Officer no later than September 1, 2002. *Exhibit 7, at 4.*

The NAGE Trustee, Joseph Buckley, submitted a proposal to amend the NAGE Constitution. *Exhibit 6, at 2.* The proposal provided that "[e]xcept as expressly stated, any amendment to this Constitution and Bylaws shall become effective immediately upon adoption at the close of the Convention at which it was adopted." *Exhibit 9 at 4 (Letter from SEIU President Stern to NAGE Members re: Appeal of Election Protest No.2002-12); Exhibit 14 at 2; Exhibit 16, (Decls.) ¶ 12. (The proposal was to amend Article XIII, Sec. 12 of the NAGE Constitution; Exhibit 2).* Convention Delegates David Holway – a candidate for President – and Barbara Osgood – a candidate for Vice President – campaigned for the addition of a new "National Executive Board consisting of thirty members, in addition to thirteen principal NAGE officer positions (the "Holway proposal"). *Exhibit 10 (SEIU NAGE Officer Candidate Campaign Material); Exhibit 16 (Decls.) ¶ 10.* Their slate proposed the idea informally in materials on the campaign website of their slate of officers. *Exhibit 10 at 15.* The campaign materials were distributed by mail to all NAGE members by NAGE, together with campaign materials for the opposing slate of officers, the Delorey slate. *Exhibit 10 at 1, 13-15; Exhibit 16, Decls. ¶ 10.*[2] The Convention delegates received copies of the constitutional amendment

---

[2] The Holway and Osgood's campaign material stated, "We envision a broadened board consisting of a National President, two National Executive Vice Presidents, ten National Vice

incorporating the Holway proposal upon their registration at the Convention, September 17, 2002. *Exhibit 9 at 5.* Defendants have never alleged that a proposed constitutional amendment based on the Holway proposal was ever sent to the union membership. *Exhibit 9 at 3, 5; Exhibit 14 at 2.*

The Holway slate of candidates included candidates for the proposed thirty (30) Executive Board positions that did not exist at the time of the Convention Call or at the time election rules were issued. Exhibit 6 at 2, 5.

The Delorey slate nominated and campaigned for the officer positions listed in the Convention Call and the Election Rules, but did not nominate or campaign for anyone for the 30 new Executive Board positions proposed by the Holway slate. *Exhibit 16 (Decls.) ¶¶ 6, 7, 11.* The Delorey slate – led by Joseph Delorey for President – became aware generally of the Holway proposal in mid-August 2002. *Id. ¶ 10.* The Delorey slate did not identify candidates or campaign for those 30 positions because the positions were not included in the Convention Call and the positions were not included in the Election Rules, and it understood that if new officer positions were to be created by vote of delegates at the convention, the new positions would be created at the close of the convention and filled at the next convention, after the rank and file had been notified of them . *Id. ¶¶ 11, 15, 16.*

On September 10, 2002, the Election Officer issued an amendment to the election rules

---

Presidents, and thirty National Executive Board Members." It also stated, among other things, "We will expand the Executive Board . . . the new Executive Board will consist of 40 members drawn from locals around the country. Ten vice presidents and 30 board members will come from the federal, state, municipal, police, and EMT units that comprise NAGE . . . with a representative 40-member executive board, we will improve communications among member locals and strengthen the democratic process. *Exhibit 10, at 15.*

that suspended the September 1, 2002, deadline for nomination of candidates for national office, and permitted nominations to be made at the Convention. *Decls. ¶ 13; Exhibit 11 at 1 (September 10, 2002, Election Memorandum from Election Officer to NAGE Members, Candidates and Delegates).* The Delorey slate learned of these changes at the Convention. *Exhibit 13 at 1 (September 19, 2002, Letter from Candidates for New Positions to Election Officer); Exhibit 16 (Decls.) ¶ 13.*

At the start of the Convention, September 18, 2002, the delegates to the Convention adopted the Trustee's amendment that amendments to the Constitution and Bylaws become "effective immediately upon adoption at the close of the Convention at which it was adopted." *Exhibit 2, Exhibit 6 at 2; Exhibit 16 (Decls.) ¶ 12.* On the same day, the Holway proposal constitutional amendment for 30 additional Executive Board officers was put to a vote. *Exhibit 6 at 3.* The Election Officer announced to delegates that if they adopted the Holway amendment, nominations for the new positions were to be received the same afternoon, September 18, 2002, and the election held the following day. *Exhibit 6 at 3; Exhibit 16 (Decls.) ¶ 14, 16.* The amendment was adopted. *Exhibit 9 at 4-5; Exhibit 16 (Decls.) ¶ 14.* As a result, the national governing structure of NAGE was enlarged to include 30 members of a new National Executive Board. According to the Trustee, this was a "major restructuring" of the Union. *Exhibit 11 (Election Memorandum of Henry F. Murray, Election Officer).*

At approximately 5:00 p.m. on the same day, September 18, 2002, nominations for the restructured NAGE national officer positions were conducted. *Exhibit 6 at 3; Exhibit 9 at 5.* From the time of the adoption of the Trustee and Holway amendments until the call for nominations, the Delorey Slate had no more than four hours to rearrange its nominees and solicit

nominees for the thirty new executive board positions. *Exhibit 9 at 5; Decls. ¶ 16*. At

approximately 1:30 p.m. on September 19, 2002, the Convention held the election for officers.

*See Exhibit 6 at 3*. All of the nominees on the Delorey slate lost the election. *See Exhibit 9, at 5*.

From the time of the adoption of the Trustee and Holway amendments until the election, the

Delorey slate had less than one day to campaign for its candidates for the 30 newly created

positions. *Exhibit 16 (Decls.) ¶¶ 16*. The Delorey slate was unable to mount a campaign for the

new positions. *Id.*

By letter dated September 19, 2002, Delorey, together with approximately 25 other

NAGE members, filed a protest with the Election Officer, alleging that they were denied a

reasonable opportunity to nominate candidates for the 30 newly created positions and that they

were denied a reasonable opportunity to campaign for the 30 new positions. *Exhibit 13 at 1*.

The Election Officer denied the protest, September 25, 2002. *Exhibit 6 at 5*. On September 30,

2002, the Delorey complainants appealed the Election Officer's decision to the International

President of the SEIU; *Exhibit 14 at 5;* which the SEIU International President denied, January

3, 2003. *Exhibit 9 at 8*. As noted, the Delorey complainants then filed a complaint with the

Secretary of Labor, on January 17, 2003. *Exhibit 15*. The Secretary found that as to the 30

Executive Board officers, there was probable cause to believe that NAGE had failed to provide

adequate safeguards to ensure a fair election, which may have affected the outcome of the

election. *Id.; Exhibit 2, at 3*. She found that probable cause was absent with respect to election

of the 13 principal officers because the Delorey slate had had adequate notice of the election and

opportunity to campaign for those positions. See Attachment C, Statement of Reasons at 2-3.

On April 14, 2004, the Court permitted the union complainants to become Intervenors in

this case.

## II.  THE APPLICABLE LAW

The LMRDA is designed to provide for the democratic election of labor union officers. Local 3489, United Steelworkers of America v. Usery, 429 U.S. 305, 309 (1977).  The principal purpose of the LMRDA is to prevent undemocratic practices in unions.  See Wirtz v. Hotel, Motel & Club Emp. Union, Local 6, 391 U.S. 492, 496 (1968).

Title IV of the Act establishes a set of substantive rules regarding election of union officers.  29 U.S.C. § 481-83.   A union is required to provide "adequate safeguards to insure a fair election" of union officers.  29 U.S.C. § 481(c).   United Steelworkers of America v. Sadlowski, 457 U.S. 102, 117 (1982).  Unions are free "to run their own elections" as long as unions conform to the LMRDA's minimum standards.  Sadlowski, 457 U.S. at 117, quoting Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 471 (1968).  The responsibility for insuring a fair election lies with the union.  Hodgson v. United Mine Workers, 344 F. Supp. 17, 26 (D.D.C. 1972).  Pursuant to the "adequate safeguards" provision, unions must conduct their elections in a manner that does not violate the fundamental precepts of fairness that are essential to the selection of leaders through a democratic electoral process.  See Donovan v. Graphic Arts Int'l Union, 118 LRRM 2092, 2092 (C.D. Ill 1984).

 "Adequate safeguards," as contemplated by the Act, specifically refers to the mechanical and procedural aspects of running an election.  See Brock v. Writers Guild of America, West, Inc., 762 F.2d 1349, 1357 (9th Cir. 1985).  "A labor organization's wide discretion regarding the conduct of its elections is . . .  circumscribed by a general rule of fairness."  29 C.F.R. § 452.110. Title IV sets out a number of election procedures that unions are required to  fulfill.  Crowley v.

Local No. 82, 679 F.2d 978, 983 (1ˢᵗ Cir. 1982).  One such requirement is that,

> In any election [for union officers] . . .  a <u>reasonable</u> <u>opportunity</u> shall be given
> for the nomination of candidates and every member in good standing shall be
> eligible to be a candidate and to hold office . . . and . . .  shall have the right to
> support the candidate . . . of his choice . . . .

29 U.S.C. § 481(e).   The Department of Labor's interpretive regulations, "Nominations for

Office," provide that notices of a union election must be "reasonable," and "must give timely

notice reasonably calculated to inform all members of the offices to be filled in the election."

29 C.F.R. § 452.56(a).  The election notice  must reach all union members through the mail, and

be reasonably calculated to inform the members of the offices to be filled, unless the election is a

regular, periodic election of all officers."  29 C.F.R. § 452.99.   The regulations require union

members to be "fully informed of the proper method of making such nominations."  29 C.F.R. §

452.56(b). The election notice must reach "all members in good standing in sufficient time to

permit such members to nominate the candidates of their choice."  <u>Id</u>.

The Department of Labor's interpretive regulations, entitled "Campaign Safeguards,"

provide:

> The opportunity for members to have a free, fair and informed expression
> of their choices among candidates seeking union office is a prime objective of
> Title IV of the Act.  Voters can best be assured opportunity for an informed
> choice if certain campaign rights are guaranteed to candidates and their supporters
> . . . . 29 C.F.R. § 452.66

> There must be a reasonable period prior to the election during which office-
> seekers and their supporters may engage in the campaigning that the Act
> contemplates and guarantees.  What is a reasonable period of time would depend
> upon the circumstances. . . . 29 C.F.R. § 452.79

 Violations of the "adequate safeguards" provision of the Act are determined on a case-

by-case basis.  <u>See</u> <u>generally</u> <u>Brock v. Writers Guild of America, West, Inc.</u>, 762 F.2d at 1357.

9

Courts have applied the "adequate safeguard" provision to ensure a broad range of procedural protections.  See McLaughlin v. Local 1000, Civil Serv. Employees Ass'n, AFL-CIO, 132 LRRM 2522, 2522 (N.D.N.Y. 1988) (violation where ballot did not accurately reflect choices available to members); Usery v. District 22, United Mineworkers, 543 F.2d 744, 750 (10th Cir. 1976)(requirement of nomination by five locals for a place on ballot for district offices and nomination by three locals for place on ballot for subdistrict offices deprived members of reasonable opportunity to nominate candidates);  Wirtz v. Local Union 262, Glass Bottle Blowers Ass'n, 290 F. Supp. 965, 965 (N.D. Cal. 1968) (violation of  § 482(c) where incumbent president distributed ballots during election with no account for number of blank ballots in president's possession and no record of unused ballots returned to local); Shultz v. Independent Employees Union of Packerland Packing, 74 LRRM 2137, 2137 (W.D. Wis. 1970) (violation where labor organization failed to permit candidates to have observers throughout election process); Wirtz v. Local Union No. 1662, United Bhd. of Carpenters, 285 F.Supp. 455, 455 (N.D. Cal. 1968) (violation of § 482(c) where votes not recorded accurately were tallied by election committeemen who had been on duty continuously for 24 hours).

In Marshall v. Int'l Bhd. of Teamsters, Local 648,  643 F.2d 575, 577 (9th Cir. 1980), the Court of Appeals for the Ninth Circuit held that a union had violated 29 U.S.C. § 482(c) when the union abruptly changed its election procedures from a system where the candidates had a 30-day period in which to campaign between the nomination meeting and the election to a system where ballots were mailed five days after nomination and voting was immediate.  In Hodgson v. United Mine Workers, 344 F. Supp. 17, 26-27 (D.D.C. 1972), the court found that the union failed to provide "adequate safeguards" for the election process where the union failed to

provide sufficient voting information to candidates and failure to notify candidates of poll locations in advance so that poll watchers could be put in place.

Title IV also protects the unions from excessive interference with their internal structure. Hodgson v. Local 6799, United Steelworkers of America, 403 U.S. 333, 338 (1971)(act ensures democratic union elections "without departing needlessly from the longstanding congressional policy against unnecessary governmental interference with internal union affairs").  The protection to the unions comes from the fact that the ability to sue for violations of Title IV is limited to the Secretary.  29 U.S.C. § 482(b).   Wirtz v. Glass Bottle Blowers, 389 U.S. at 472. Dissatisfied union members are forced to proceed through the Secretary rather than the courts. 29 U.S.C. § 482(a).  See Trbovich v. United Mineworkers, 404 U.S. 528, 530-31 (1972).   This requirement prevents frivolous suits and multiple suits.   If the Secretary "finds probable cause to believe that a violation of [the Act] . . .  has occurred and has not been remedied," she shall "bring a civil action against the labor organization as an entity . . . to set aside the invalid election, if any, and to direct the conduct of an election . . . . under the supervision of the Secretary . . . . "  29 U.S.C. §  482(b).   Harrington v. Chao, __ F.3d __ (1st Cir. 2004), 2004 WL 1379665 at 2.  If the court finds that the violation "may have affected the outcome of an election," the court is required to declare the election "void and direct the conduct of a new election under the supervision of the Secretary. . . ." 29 U.S.C. § 482(c).   Donovan v. District 35, 702 F.2d 25, 27 (1st Cir. 1983)(district court erred in failing to direct a new election where notice of election not provided to all union members by mail).  See Reich v. Local 843, Bottle Beer Drivers et al, 869 F. Supp. 1142, 1151 (D.N.J. 1994); Wirtz v. Nat'l Maritime Union of America, 284 F. Supp. 47, 587 (S.D.N.Y. 1968), aff'd, 399 F.2d 544 (new election to be held

where reasonable probability that violation may have affected outcome of election of any union officer).

The Supreme Court has concluded, "the statute relies upon the special knowledge and discretion of the Secretary for the determination of both the probable violation and the probable effect" of an election irregularity. Dunlop v. Bachowski, 421 U.S. 560, 571 (1975). By the time a suit has been filed by the Secretary, she has screened out the meritorious from the frivolous allegations, Trbovich v. UMW, 404 U.S. at 537. See also Brennan v. Silvergate District Lodge No. 50, 503 F.2d 800, 804 (9th Cir. 1974); Secretary of Labor v. General Teamsters, Chauffeurs, Warehousemen and Helpers, Local 404, Nos. 82-0318, 82-0182 (D. Mass. April 1, 1987)(Ponser, J.) at 9 (Attachment B).

The Secretary's decision whether to sue a union for violation of Title IV is reviewed only under the arbitrary and capricious standard. Dunlop v. Bachowski, 421 U.S. 560, 565 n. 5 (1975); Harrington v. Chao, 2004 WL 1379665 at 3.


### III.  ARGUMENT

**A.**    **Plaintiff is Entitled to Summary Judgment that The Election Violated the LMRDA.**

The undisputed facts demonstrate that, as a matter of law, Defendant NAGE failed to provide adequate safeguards to ensure a fair election within the meaning of  29 U.S.C.  § 481(c).[3]

---

[3]Rule 56, Federal Rules of Civil Procedure, provides that a Motion for Summary Judgment shall be granted where "the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party bears the initial burden of establishing that there is an absence of a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Mulvihill v. Top Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). Once the movant has satisfied its burden, the nonmoving party must "set forth specific facts showing that there is a genuine

First, NAGE failed to provide adequate notice of the election of the 30 new officer positions. The Convention Call of May 24, 2002 and the Election Rules issued by the NAGE Election Officer, each informed the membership that the only officers to be elected at the Convention were the National President, six National Vice Presidents, National Treasurer, National Executive Secretary, and four Alternate Vice Presidents.   Moreover, the local unions had made decisions about whether to send delegates to the convention and whom to send based on the official Convention Call and the Election Rules, which each provided that delegates were required to be named by July 31, 2002 and officers nominated by September 1, 2002, well before the 30 new positions were established.  *Decls. §§ 7-8.*

Despite the NAGE Convention Call and Election Rules, the amendment requiring 30 new officer positions was passed at the Convention and was deemed by the NAGE Election Officer to go into effect immediately.  NAGE called for immediate nominations and elections of the 30 positions as well as the 13 principal positions.  The addition of 30 officers presented a radical and sudden change in the governing structure of NAGE.  The Delorey slate had come to the Convention with candidates for 13 officers and had only a few hours to identify candidates for the 30 new positions.  Nominees had to be identified with little forethought and without consulting rank and file members. See Marshall, 643 F.2d at 577 (unfair election when balloting procedure suddenly changed from 30 days after nomination to immediately after nomination);

---

issue for trial;" FRCP 56(e); setting forth specific facts showing there is a genuine issue for trial. Anderson, 477 U.S. at 250.  "Establishing a genuine issue of fact requires more than effusive rhetoric and optimistic surmise . . . .  Evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of truth which a factfinder must resolve at an ensuing trial." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997)(citations omitted).  The nonmovant must  point to specific, competent evidence to support his claim. August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992); see Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 796 (1st Cir. 1992).

See Hodgson, 344 F. Supp. at 26-27 (unfair election when union failed to provide challenger, Joseph Yablonsky, with advance information about election procedures and poll locations).

While the Delorey slate was aware from the Holway campaign literature that the Holway slate was planning to propose an expansion of NAGE officers, the Delorey slate reasonably relied on the Convention Call and Convention Rules regarding the officers to be elected at the Convention. The Delorey slate was not required to have identified and campaigned for 30 executive board nominees for positions that did not exist at the time and might not have been proposed as an amendment or adopted at the Convention. Moreover, the deadline of September 1, 2002, for nomination of candidates for office, set by the Elections Officer, was rescinded on September 10, 2002, to permit nominations at the Convention. The Delorey slate was unaware that the nomination deadline had been rescinded before it arrived at the Convention. Had the recision by the Election Officer been received, it would not have provided adequate notice because it provided no information on a constitutional amendment adding 30 officers and no information regarding immediate nomination and election of those officers. It failed even on September 10, 2002, only one week before the Convention, to provide members with sufficient information regarding the potential for a substantially different election than that announced to the union membership in the Convention Call and Election Rules.

NAGE also violated the "adequate safeguards" provision of the Act, 29 U.S.C. § 481(c), in failing to provide the Delorey candidates with a reasonable time to campaign for the 30 newly-created positions. 29 U.S.C. § 481(e) provides that every member shall have the right to support the candidate of his choice. These provisions require sufficient time to select and present candidates for office and the ability of the candidates to campaign.

14

The rapid events at the Convention precluded adequate time for the Delorey slate to select and campaign for 30 new candidates. NAGE required immediate nomination and election of officers to fill the just-created positions. There was insufficient time for the Delorey slate to reach out to rank and file members for their opinions or an invitation to be nominated. There was insufficient time for rank and file members who may have become aware of the amendment to contact the delegates, to become delegates themselves, or to volunteer for nominations. There was insufficient time to deliberate regarding the appropriate nominees for the new positions and no time to present a campaign for them. NAGE's failure to provide a reasonable time for nomination and campaigning offends the "adequate safeguards" requirement of the statute.

This case is similar to Marshall v. Int'l Bhd. of Teamsters, Local 648, where the Court of Appeals for the Ninth Circuit concluded that a union had violated 29 U.S.C. § 482(c) when the union abruptly changed its election procedures from a system where the candidates had a 30-day period in which to campaign between the nomination meeting and the election to a system where ballots were mailed five days after nomination and voting was immediate. 643 F.2d at 577. Noting that the Act contains no requirement as to the exact length of campaigns for office, the Court determined that the Act clearly recognized the importance of campaigning in assuring fair elections. Id. "The lack of opportunity to send out campaign literature immediately before the election may have severely hampered the challengers' prospects." Id. at 576. Pursuant to the holding in Marshall, the Act requires adequate opportunity for candidates to campaign and prohibits a change in voting procedures that deprives one slate of officers of the opportunity to reach the voters. Id. at 577.

Defendant NAGE may take the position that the Delorey slate should have nominated

and campaigned for the thirty (30) National Executive Board positions prior to the Convention because they were aware of the gist of the constitutional amendment from the Holway campaign literature.  This position would require that the union members spend time and money to nominate and campaign for offices that did not exist at the time.  Even if the Delorey slate were aware of the proposal, it did not know whether a constitutional amendment would actually be introduced or would be passed creating the 30 positions and did not know that the election of officers to 30 new positions would be immediate.  Requiring the Delorey slate to undertake these measures was unreasonable in light of the requirement that the membership be provided "adequate safeguards" for a fair election.  See Donovan, 118 LRRM at 2092.

Accordingly, NAGE violated section 481(c) of the Act by failing to provide its members with complete and accurate information regarding the election held at the 2002 NAGE Convention, and by failing to provide a reasonable time for nomination and campaigning for the 30 new positions.

**B.** ***Plaintiff is Entitled to an Order Requiring a New Election of the 30 New Positions.***

The LMRDA, 29 U.S.C. § 482(c), requires the district court to declare an election void and to order a new election under the Secretary's supervision if the Secretary proves that a violation of 29 U.S.C. § 481 that "may have affected the outcome of the election." See  Glass Bottle Blowers, 389 U.S. at 473-74.  The Secretary is not required to establish that the violation did affect the election results.

The legislative history of what ultimately became section 482 reveals that the "may have affected" standard was selected in preference to more stringent language that would have required the Secretary to show that the violation "actually affected" the election's outcome.

16

Wirtz v. Hotel Employees,  391 U.S. at 505-06.  As Senator Goldwater explained during

consideration of the amendment:

> The Kennedy-Ervin bill (S. 505), as introduced, authorized the
> court to declare an election void only if the violation of section 401
> actually affected the outcome of the election rather than may have
> affected such outcome.  The difficulty of providing such an
> actuality would be so great as to render the professed remedy
> practically worthless.  Minority members in committee secured an
> amendment correcting this glaring defect and the amendment is
> contained in the conference report.

105 Cong. Rec. 19,765 (emphasis added).   See Wirtz v. Hotel Employees, 391 U.S. at 505-06.

Accordingly, courts have understood the "may have affected the outcome" standard to be a

"liberal" one.  Marshall v. American Postal Workers Union, AFL-CIO, 486 F. Supp. 79, 82

(D.D.C. 1980).  Once a violation of section 482 has been established, the Secretary has

established a prima facie case that the violation "may have affected the outcome of the election."

Donovan v. Local Union 70, 661 F.2d 1109, 1202 (9th Cir. 1981), quoting Wirtz v. Hotel

Employees, 391 U.S. at 506-07.  See also, Reich v. Local 843, Bottle Beer Drivers,

Warehousemen, Bottlers and Helpers, Int'l Brotherhood of Teamsters, 869 F.Supp. at 1150-511

(once plaintiff established a prima facie case that the "violation may have affected the outcome

of the election," burden shifts to defendant to produce "tangible evidence" that the violation did

not influence the results").

 NAGE cannot overcome the Secretary's prima facie case by showing that NAGE lacked

bad faith, was ignorant of the violations, etc.  See Donovan v. Local Union 70, 661 F.2d at 1202.

Ordering a new election subject to the Secretary's supervision is equitable in the sense that it

may be molded to "the necessities of the particular case;" Reich v. Local 843, 869 F. Supp. at

1152, 1154; but supposed unclean hands on the part of complainants does not preclude a new

election.  Id. at 1152 (where union local funded a letter campaigning for a candidate in an election for president, court rejected argument that a new election was not required because the letter was precipitated by opposing candidate's spreading misinformation).  As the Secretary's burden of proof requires only that she show a violation that may have affected the outcome of an election, the union defendant may prevail only if it establishes that the violation could not have affected the outcome of the election.  Ellis v. Chao, 336 F.3d 114, 120, 126 (2d Cir. 2003).  This burden is "very substantial;" Donovan v. Local 719, 561 F.Supp. 54, 59 (N.D. Ill 1982).

Obviously, the Secretary meets her burden in this case:  the conduct of the election was precipitous in the extreme.  The union Trustee himself characterized the addition of officers as "major restructing" of the union. *Exhibit 11.*  Yet the Delorey slate was required to identify and nominate candidates for the 30 additional officers on a moment's notice and proceed to an election without an opportunity to campaign.   There was no opportunity to consult with the rank and file, which had faulty information regarding what officers were to be elected.  There was no opportunity for the local unions to send additional or substitute convention delegates based on accurate election information because the deadline for designation of delegates was over six weeks earlier.   In the undisputed facts presented here, the Secretary correctly determined that NAGE failed to provide adequate safeguards that may have affected the outcome of the election. Indeed, it is hard to imagine how she could possibly have determined otherwise.

Defendant may argue that the large margin of votes won by the Holway slate shows that the Delorey slate could not have prevailed and therefore the election procedure did not affect the outcome of the election.  This defense was rejected by the Supreme Court in Local 6, Hotel, Motel & Club Employees Union, 391 U.S. at 506, which held that the argument was merely

speculation and that the defeat of one slate demonstrated nothing about the performance of those who did not have an opportunity to be candidates at all.

In this case, the Secretary has clearly established that NAGE violated section 481(c) of the Act with respect to the 30 Executive Board officer positions filled at the Convention and that the violation "may have affected the outcome of the election."

### C. *Re-election of Thirteen Officer Positions is Not Warranted by the Act.*

The Secretary has determined that the election of the thirteen highest NAGE officers did not violate the Act.   See Statement of Reasons at 2-3 (Attachment C).[4] Complainants/Intervenors propose to the Court that re-election of these thirteen officers must be compelled anyway as part of the remedy for the damage done by the invalid election of the 30 Executive Board members.  Their proposal is a back-door attempt to accomplish what the front door bars.  The Act indicates that the election of an officer must be challenged administratively by the complainants and challenged by the Secretary to obtain a remedy for unfair elections. The Act authorizes solely the Secretary to seek a judicial remedy for what she has determined is a violative election.  29 U.S.C. § 483.   Trbovich v. United Mine Workers, 404 U.S. at 531, 537; Calhoon v. Harvey, 379 U.S. 134, 140 (1964)(rights guaranteed by the Act are to be resolved by the administrative and judicial procedure set out in the statute).  See, S. Rep. No. 187, 86th Cong., 1st Sess. 21 (1959), USCCAN 2318.   As the Court of Appeals for the First Circuit has decided,

---

[4]The Secretary determined that the thirteen principal officers had sufficient notice and opportunity to campaign, since they were fully aware of the officers to be filled, candidate eligibility requirements, procedures for electing delegates and for nominating and electing officers.   See Statement of Reasons at 2-3.  The rank and file of the union were also on sufficient notice of election of these officers.  Id.

only the Secretary may ask the Court to set aside an election, and relief requested by union members only is barred.  Molina v. Union de Trabajadores de Mueller y Ramas Anexas, Local 1740, UTM-ILA, et al., 762 F.2d 166, 168 (1st Cir. 1985).

Pursuant to Trbovich, complainants may intervene in an LMRDA suit in order to "assist the court in fashioning a suitable remedial order." Trbovich v. UMW, 404 U.S. at 537 n.8. However, complainants' participation is limited to the presentation of arguments in support of the Secretary's determination regarding need for re-election. *Id*. at 537.   The role of a complainant is to assist the Secretary and not displace her.  Trbovich, 404 U.S. at 533. Expansion of complainants' participation would undermine the Secretary's role as the "screening mechanism between the dissatisfied union member and the courtroom;" Trbovich v. UMW,  404 U.S. at 534; usurping the Secretary's role as the doorkeeper regarding which complaints of unfair election were meritorious and which were unworthy of action.  See Brennan v. Silvergate District Lodge No. 50, 503 F.2d at 806.   Moreover, Congress' goal of protecting the union would be thwarted if the union were required to respond to unfair election claims not approved by the Secretary.  Usury v. District No. 22, UMW, 567 F.2d 972, 974 (10th Cir. 1978).

Accordingly, election of the thirteen officers did not violate the Act and should not be overturned in the guise of a remedy for the unfair election of the 30 Board members.   Whether Complainants/Intervenors allege that the election of the thirteen chief officers is unfair due to the taint of the unfair election of the others or unfair in and of itself, it is a challenge to an election of officers that the Secretary has rejected as unmeritorious, as the Secretary's Statement of Reasons makes plain:

> The Department has considered and rejected the contention that
> the violation that that did occur with respect to the elections of the

> 30 newly created executive board positions may have affected the outcome of the 13 principal officer races.  The candidates for the 13 principal offices believe the violation hindered their efforts at recruiting a slate of candidates, and that, absent the violation, they might have recruited different candidates for the 30 executive board position, and these "down-ballot" candidates might have effected an alteration in the dynamics of every race in the election, thereby securing victory for the 13 defeated principal officer candidates.  Although no one can say with perfect certainty that this series of events could not have transpired, this highly attenuated causal chain does not represent the natural or logical consequences of the violations at issue, and would seemingly require the wholesale rerun of every election in which one candidate in one race was disadvantaged, on the theory that an irregularity in one race could conceivably have affected every other.  The LMRDA's guarantee of campaign rights, see 29 U.S.C. § 481(c), is not violated by speculation that a more effective means of campaigning could have been made available.

(Attachment C).

After all, the Supreme Court in Trbovich v. UMW, 404 U.S. at 574, held that complainants/interveners could not even posit new reasons for supporting the Secretary's determination that an election was improper, and the addition of new claims in support of the Secretary's determination is surely much less of an intrusion into the Secretary's case than what Complainants/Intervenors in this case endeavor to do.   Moreover, permitting Complainants/Intervenors to expand the number of officer elections deemed objectionable would be inconsistent with Congress' goal of minimizing interference in union elections.  Id. at 532. The purely speculative nature of Complainants/Intervenors' challenge on the thirteen officers makes it especially important to respect the Secretary's decision and protect the union from having to defend the election of every officer elected.   The Complainants/Intervenors, after all, are after the goal of reviving their chances of becoming union officers, which is a different goal than the Secretary's goal of ensuring fair elections and protecting union processes from

unwarranted challenges.

Complainants/Intervenors may take the position that the election of the thirteen principal officers was illegal because the lineup of the thirteen original officers was slightly changed. The original positions of union secretary and union treasurer were changed at the Convention to two additional vice presidents, and several vice presidents were changed from alternate vice presidents to vice presidents and executive vice presidents. All of these positions are responsible ones in the governance of the union. The same individuals on both the original Delorey slate and the original Holway slate remained as candidates in the re-configuration. Their qualifications and views were known from their activities throughout the election campaign to the rank and file members as well as the deletes. The Delorey slate's platform with respect to these thirteen officers had had full consideration by the rank and file members and the delegates for weeks prior to the election. Trbovich v. UMW, 404 U.S. at 537.

The April 14, 2004, ruling of this Court on Complainants/Intervenors' Motion to Intervene may be interpreted to have held that footnote 8 of Trbovich v. UMW, 404 U.S. at 537, authorizes this Court to impose re-election of the thirteen principal officers as a remedy. However, Trbovich holds that an intervenor may not challenge an election that has already occurred, and Footnote 8 does not hold otherwise. Footnote 8 points out the distinction between the old election challenged by the Secretary, and the re-election of the same officers that is requested by the Secretary as a remedy. The limitations of Trbovich apply with respect to the "old election," and footnote 8 does not add to or detract from those limitations. What Complainants/Intervenors are permitted to do is to assist the court in determining whether the conduct of the new, re-election under the supervision of the Secretary, as to timing, terms,

22

conditions, etc., has been or will be lawful.  As to the "old" election (such as the election challenged here), <u>Trbovich</u> clearly holds that Congress intended to insulate the union from any complaint that did not appear meritorious to <u>both</u> complainants <u>and</u> the Secretary.  404 U.S. at 537.

Nor has any court since <u>Trbovich</u> construed any portion of <u>Trbovich</u> to permit an intervenor to challenge the election of officers that the Secretary has determined to be free of material defect.  <u>Secretary of Labor v. General Teamsters, Chauffeurs, Warehousemen and Helpers, Local 404</u>, Nos. 82-0318, 82-0182 at 9 (D. Mass. April 1, 1987) (Attachment B)("Congress intended to insure that unions were not harmed by additional claims); <u>Usery v. District No. 22, UMW</u>, 567 F.2d at 974 (relying on <u>Trbovich</u>, intervention limited to the violations of Title IV as determined by the Secretary; "To require the union to respond to these . . . would circumvent the screening function assigned to the Secretary"); <u>Brennan v. Silvergate District Lodge 50</u>, 508 F.2d at 806 (<u>Trbovich</u> held that intervention was permissible if limited to support of the Secretary's contentions and does "not subject union to any intrusion into its affairs not initially caused by the Secretary's decision to bring suit").

### V.  CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court enter summary judgment in favor of Plaintiff and enter an Order:

(1)     Declaring Defendant's election for the office of 30 National Executive Board members null and void;

(2)     Directing Defendant to conduct a new election, as soon as is reasonably possible, for those offices under the supervision of Plaintiff;

(3)     Awarding the Secretary the costs of this action; and

(4)     Granting such other relief as may be appropriate.

           Respectfully submitted,

           MICHAEL J. SULLIVAN
           United States Attorney

           /s / Anita Johnson
           ANITA JOHNSON
           Assistant U.S. Attorney
           John Joseph Moakley U. S. Courthouse
           One Courthouse Way - Suite 9200
           Boston, MA   02210
           (617) 748-3266

Of Counsel:

Maureen Canavan
Office of the Regional Solicitor
U.S. Department of Labor
JFK Federal Building, Room E-375
Boston, MA  02203

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing, together with the accompanying Statement of Material Facts, upon Robert M. Weinberg and Philip A. Hostak, Bedhoff & Kaiser, P.L.L.C., 805 Fifteenth St., N.W., Suite 1000, Washington, D.C. 2005, and James A. Brett, Reed, Brett, Dawson & Wilson, 101 Tremont St., Boston, Mass. 02108, counsel for Defendant, and upon Max D. Stern and Kenneth M. Resnik, Stern, Shapiro, Weissberg & Garin, 90 Canal St., Ste. 500, Boston, Mass. 02114-2022, counsel for intervenors, by first class mail, postage prepaid, on this 30th day of June 2004.

           /s /Anita Johnson